

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

February 12, 1948

Hon. John H. Winters, Executive Director
State Department of Public Welfare
Austin, Texas

> Opinion No. V-497.
>
> Re:  The necessity for individuals
>       and county agencies, who place
>       a child for adoption, to secure
>       a license from the Child Wel-
>       fare Division of the State De-
>       partment of Public Welfare.

Dear Sir:

Reference is made to your request for an opinion on the above-captioned subject, from which we quote, in part, as follows:

"The question has arisen as to the necessity for licensing individuals who place children. Occasionally arrangements are made through an attorney or a physician for the placement of a child for adoption. No doubt, the attorney or the physician considers his action in placing the child as being to the best interest of the child and the potential adoptive parents. Some attorneys contend they can serve their clients in their legal capacity in this respect. Usually, there is no fee charged for the placement, but the action is taken gratuitously at the request of the natural or adoptive parents.

"It has always been the interpretation of the Department of Public Welfare that under the statute any person or agency which places a child for adoption must have a license and that the degree or number of children placed would not alter the situation. In other words, it has been our interpretation that individuals as well as organized agencies came within the scope of the statute.

"Our question is:  Does an individual
who places a child either for pay or gratuit-
ously come within the scope of Article 4442-a
so that a license by the Child Welfare Divi-
sion of the State Department of Public Welfare
is required?  Does it alter the fact that the
attorney or the physician is acting in his
professional capacity in serving either the
natural parents or the foster applicants?

"In Opinion No. R-702 you answered our
question regarding the inspection and licen-
ing of commercial boarding homes for child-
ren.  In that opinion reference was also made
to the responsibility of the State Department
of Public Welfare in relation to the boarding
homes selected by County Probation Departments
in metropolitan areas for the temporary deten-
tion of children pending investigation and
court hearing; however, we shall appreciate
your opinion and advice concerning the depart-
ment's responsibility for licensing Probation
Departments which place children for adoption
or otherwise where there is no court order di-
recting the placement.

"Our question in this connection is:  Are
county agencies such as Probation Departments
required to secure a license to place child-
ren for adoption or otherwise where they do
so without a court order directing the place-
ment?"

The pertinent excerpt from Article 4442a, V.C.S.,
on the licensing of child placing agencies, reads as fol-
lows:

"Sec. 1.  Every person, association or
corporation, whether operating for charity
or revenue, who shall own, conduct or manage
a day nursery, children's boarding home, or
child placing agency, or other place for the
care or custody of children under fifteen
years of age, or who shall solicit funds in
this State for any such place or institution,
shall obtain an annual license from the State
Board of Health, which license shall be is-
sued without fee, and under such reasonable
and uniform rules and regulations as said

Board shall prescribe . . ."

As you have noted, Article 695e, V. C. S., transferred the foregoing authority and duty of licensing such agencies to the Child Welfare Division of the State Department of Public Welfare.

Your first question refers to the applicability of the licensing statute to attorneys or physicians who, acting in their professional capacity, place or assist in the placement of a child on occasions. It is our opinion that the necessity of securing such a child-placing license from the Child Welfare Division does not apply in the instances you have mentioned.

We quote the following from 37 Corpus Juris 215, Section 70:

". . . The performance of a single act, or even a number of isolated acts, pertaining to a particular business, does not constitute engaging in or carrying on such business within the meaning of a law imposing a license or tax thereon, unless an intent to engage in the business is clearly apparent . . ."

Applicable to your particular inquiry, Article 4442a, V.C.S., requires a license of "Every person . . . who shall own, manage or conduct . . . a child placing agency." It does not state that a license is required of every person who places a child. In order to constitute a situation necessitating the procurement of a child-placing license, the agency or institution must be capable of being owned, conducted or managed, and must have for its motivating or primary purpose the conduct of a business or occupation of placing children. It is the nature of the agency which brings it within the scope of the licensing statute, and it must be characterized by the intention to pursue or follow the occupation of child placing. Clearly, this is not true of attorneys and physicians.

In the case of Smith v. American Packing and Provision Company, decided by the Supreme Court of Utah, 102 Utah 351, 130 P (2d) 951, the contention was made that a State-licensed engineer had to secure a State

license as an architect because he performed a remotely related but isolated architectural function in the course of his engineering practice.   The court used the following language in holding that it was not necessary to secure an architectural license:

> "The mere fact that a licensed profession extends in some degree into the field of some other licensed occupation, does not require the licensee to have a license in each of the fields into which his profession may overlap, unless the statutes impose such requirement.   If a person had to have a license in each field into which his chosen profession or calling might overlap in some degree, he might not only have to obtain numerous licenses in different fields to engage in the field in which he is specially trained and qualified, but he might be prevented from engaging in the field in which he is particularly well qualified for the reason he could not meet all of the qualifications for license in other fields."   (Emphasis added)

Your second question inquires as to the applicability of the licensing statute to "county agencies such as Probation Departments".   We shall assume that you have reference to county agencies provided for under Title 82, V. C. S., on Juveniles, wherein are found statutes authorizing counties of various population brackets to establish County Juvenile Boards, which are to be distinguished from probation officers authorized by the "Adult Probation and Parole Law," Article 781b, V.C.C.P., pertaining exclusively to adults.

The same considerations apply to County Juvenile Boards, County Juvenile Officers and County Probation Officers, authorized by Articles 5139-5142b, V.C.S., as apply to individuals discussed in answer to your first question.   An individual act, or several isolated acts, of placing a child does not constitute the officer or board a child-placing agency.

We are not passing on the authority of such county agencies as you have mentioned to place children for adoption, as such a consideration is not applicable to your inquiry.

Hon. John H. Winters, Page 5, V-497.

## SUMMARY

Article 4442a, V. C. S., insofar as it requires a license of child-placing agencies, does not apply to attorneys, physicians, county juvenile boards, county juvenile officers, or county probation officers who occasionally place a child for adoption or for custody pending adoption.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Dean J. Capp*

Dean J. Capp,
Assistant

APPROVED:

*Price Daniel*

ATTORNEY GENERAL.

DJC:jmc